UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DEBORAH WHITE and CHRISTOPHER WHITE, | CASE NO. C21-0697-LK |
| Plaintiffs, | ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT IN PART, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT IN PART, AND REQUESTING SUPPLEMENTAL BRIEFING |
| v. | |
| SKAGIT BONDED COLLECTORS, LLC, | |
| Defendant. | |

## I.     INTRODUCTION

This matter comes before the Court on Defendant Skagit Bonded Collectors' motion for summary judgment on Plaintiffs' claims, and Plaintiffs Deborah and Christopher White's motion for partial summary judgment. Dkt. Nos. 8, 12. The Whites seek summary judgment on liability but not damages. Dkt. No. 12 at 23–24. For the reasons set forth below, the Court GRANTS the Whites' Motion for Partial Summary Judgment as to Deborah White and DENIES SBC's Motion for Summary Judgment as to Deborah White but DEFERS ruling on the remainder of the parties'

1    motions. The Court requests supplemental briefing regarding whether to certify two state law

2    issues to the Washington State Supreme Court.

3                              **II.      BACKGROUND**

4    **A.      SBC Obtains a Judgment Against Mr. White and His Former Wife**

5          Mr. White and his former wife owned a condominium at the Wesley Street Condominiums.

6    In 2009, the Wesley Street Condominiums assigned two accounts to SBC for unpaid condominium

7    dues from 2008 and 2009 for that condominium. Dkt. No. 9 at 2. In 2010, SBC filed a complaint

8    against Mr. White in Everett District Court in Snohomish County, Washington, for the unpaid

9    condominium dues. *Id*. SBC obtained a judgment against Mr. White in that case in May 2010. *Id.*;

10   Dkt. No. 9-4. In September 2010, the judgment against Mr. White was transcribed to Snohomish

11   County Superior Court and assigned case number 10-2-07879-5 (the "judgment"). Dkt. No. 9 at 2.

12   In 2020, SBC obtained an Order for Extension of Judgment against Mr. White per Section 6.17.020

13   of the Revised Code of Washington. *Id.*; Dkt. No. 9-5.

14         Meanwhile, Mr. White married his current wife, Deborah White, in 2016. Dkt. No. 12-3 at

15   1. In the summer of 2020, the two entered into a contract to purchase a new home. *Id.* at 2. They

16   paid $10,000 in earnest money, which they would forfeit if they did not comply with the purchase

17   agreement. *Id.*

18   **B.      SBC Files a Writ of Garnishment and Garnishes Mr. White's Wages**

19         In September 2020, SBC prepared and filed with the Snohomish County Superior Court an

20   Affidavit for Writ of Garnishment on Judgment for Continuing Lien on Earnings & Payments

21   Under Contract (the "Affidavit") and a Writ of Garnishment for Sixty (60) Days Continuing Lien

22   on Earnings & Payments Under Contract (the "Writ"). Dkt. No. 9 at 3; Dkt. Nos. 9-6, 9-7. The

23   amounts in the Affidavit totaled $6,662.74 as of September 21, 2020. Dkt. No. 9-6 at 1. The

24   Affidavit stated that the principal amount of the unsatisfied judgment was $2,330.00, plus court

costs and attorney's fees of $617.50 and interest in the amount of $3,715.24. *Id.* (noting that "[i]nterest accrues at the rate of 12% per annum."). The garnishee defendant was listed as The Boeing Company, Mr. White's employer. *Id.* at 3. The Affidavit was not signed. *Id.* at 3.[1]

SBC mailed copies of the Writ and Affidavit to Mr. White on or around October 1, 2020. Dkt. No. 9 at 5. Starting on October 7, 2020, the Whites and their attorney contacted SBC by phone, email, and letter numerous times to ask about the Writ and to dispute it. *Id.* at 5-6.

The Whites informed SBC that they had married each other in 2016 and sent SBC their marriage certificate by mail. Dkt. No. 12-2 at 4. They informed SBC that the garnishment was inappropriate and demanded that SBC stop the garnishment, but SBC refused. *Id.* at 4, 12–14. Instead, SBC sent a proposed settlement agreement to Mr. White's attorney on October 30, 2020. Dkt. No. 9 at 6; Dkt. No. 9-17.

While those conversations were ongoing, the Whites learned in early November 2020 that they would not qualify for a loan on the new home they were purchasing if Mr. White had an active wage garnishment. Dkt. No. 12-2 at 5. They also learned that they would be closing on their new home in December 2020, and if they did not have their financing ready at that time, they would lose their $10,000 in earnest money. *Id.* The Whites did not want to lose their earnest money and thought it would be impossible to afford an equivalent house because home prices had since risen, so they sent SBC a cashier's check in the amount of $7,200. Dkt. No. 12-3 at 4.

SBC received the Whites' cashier's check on November 11, 2020. Dkt. No. 9 at 7. In the letter accompanying the check, Mr. White stated that he was enclosing $7,200 to "cover any other expenses or interest" above the amount listed in the Writ ($7,078.29). Dkt. 9-19 at 3. He also asked

---

[1] SBC now states that it ratifies the information in the Affidavit "except the 12% interest rate." Dkt. No. 9 at 3. It explains that it charged 12% interest on the judgment from the date of the judgment until July 27, 2019, but thereafter charged interest at the rate of 9% except between April 14, 2020 and May 27, 2020, when it suspended interest pursuant to Governor Inslee's COVID-19 related proclamations. *Id.* at 3–4.

ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT IN PART, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT IN PART, AND REQUESTING SUPPLEMENTAL BRIEFING - 3

SBC to remit any excess amount and stop garnishing his wages. *Id.* (stating, "I am only paying this to stop the garnishment" and explaining that he could not close on the mortgage of the home he was trying to buy with the ongoing garnishment).

Despite receiving the check, SBC did not agree to stop the garnishment. Instead, it re-sent the settlement agreement to Mr. White and stated that the garnishment would continue until Mr. White returned the signed settlement agreement. Dkt. No. 9 at 7; Dkt. No. 9-23; Dkt. No. 12-2 at 6. During phone calls between the Whites and SBC, SBC's representatives made the following statements:

- "[Y]ou'll have to sign a garnishment settlement before we can take payment on it. That would have to be signed in our office before we take the payment." Dkt. No. 12-1 at 23.

- "The only reason why we can't apply the money is because it's in a garnishment status. So in order for us to apply the money, we have to do a garnishment settlement because it's in a legal lawsuit of a garnishment. It's a court-ordered garnishment. So basically what you're signing is that by remitting these payments for the garnishment settlement, it lets us remit the payment to the garnishment. So we can't accept the—we can't accept it without that garnishment settlement signed because it's a . . . legal cause." Dkt. No. 12-1 at 29–30.

- "[M]y attorney can't apply the money until you actually sign the garnishment settlement[.]" Dkt. No. 12-1 at 37.

- "We cannot apply your payment, nor will we, without this garnishment settlement signed. And the garnishment will keep proceeding." Dkt. No. 12-1 at 40.

- "[T]here isn't a law but it is our policy. We will not cash it or apply any money until we have that signed back in our office. . . . We have to have that signed and back in our

office or we will not apply any funds. . . . Well, you can refuse to sign it. We would just continue to absolutely collect on the account." Dkt. No. 12-1 at 45.

- When Mr. White asked if SBC needed the settlement signed and returned to stop the garnishment, SBC responded, "Correct." Dkt. No. 12-1 at 45.

Mr. White signed the settlement agreement and returned it to SBC on November 16, 2020. Dkt. No. 9 at 7.

### C.      The Whites File Suit

In May 2021, the Whites served SBC with a summons and complaint. In their complaint, the Whites claim that SBC violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, by using false, deceptive, or misleading representations or means in connection with the collection of a debt and by using unfair or unconscionable means to collect or attempt to collect a debt. Dkt. No. 1-4 at 10–11.

In addition to those federal claims, the Whites claim that SBC violated the Washington Consumer Protection Act ("WCPA"), Wash. Rev. Code § 19.86 *et seq.*, and Washington's Collection Agency Act ("WCAA"), Wash. Rev. Code § 19.16 *et seq.*, by demanding money for amounts not owed, threatening to continue the illegal garnishment, and seeking and obtaining an unlawful settlement agreement requiring payment of amounts not owed. Dkt. No. 1-4 at 11–12. The Whites also assert a claim for economic duress. *Id.* at 12–13.

### III.      DISCUSSION

### A.      Jurisdiction

The Whites served SBC with an unsigned and unfiled summons and complaint on May 5, 2021. Dkt. No. 1 at 2. On May 19, 2021, the Whites served SBC with a signed but still unfiled summons and complaint. *Id.* at 2. Although the Whites had not yet filed their complaint in King

1   County Superior Court by late May, SBC filed a notice of removal in this Court on May 27, 2021.

2   Dkt. No. 1.

3           28 U.S.C. § 1446(b) requires that a defendant file a notice of removal "within 30 days after

4   the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting

5   forth the claim for relief upon which such action or proceeding is based[.]" A case may be removed

6   to federal court only after it is commenced in state court. *Bush v. Cheaptickets, Inc.*, 425 F.3d 683,

7   686 (9th Cir. 2005). "A state's own laws and rules of procedure determine when a dispute may be

8   deemed a cognizable legal action in state court." *Id.*

9           Under Washington law, state courts have jurisdiction over cases "[f]rom the time of

10  commencement of the action by service of summons, or by the filing of a complaint[.]" Wash.

11  Rev. Code § 4.28.020. "[A] civil action is commenced by service of a copy of a summons together

12  with a copy of a complaint . . . or by filing a complaint." Wash. Superior Ct. Civ. R. 3(a). A state

13  court therefore acquires jurisdiction over a matter upon the service of a summons and complaint.

14  *Seattle Seahawks, Inc. v. King Cty.*, 913 P.2d 375, 376 (Wash. 1996). The commencement of a

15  civil action also renders the matter removable. *See, e.g., Alderson v. Delta Air Lines, Inc.*, C18-

16  1374-JLR, 2018 WL 5240811, at *3 (W.D. Wash. Oct. 22, 2018) ("The time period for removal

17  was triggered by service of the summons and complaint, regardless of the fact that [the plaintiff]

18  never filed his complaint in state court."); *Dustin v. Meridian Fin. Servs.*, C17-1087-JCC, 2017

19  WL 3773714, at *2–3 (W.D. Wash. Aug. 31, 2017).

20          Here, the Whites' suit commenced with the May 19, 2021 service of the signed summons

21  and complaint. SBC's notice of removal, filed on May 27, 2021, fell within the thirty-day removal

22  period. 28 U.S.C. § 1446(b).

23          This Court has subject matter jurisdiction over the Whites' claims pursuant to 28 U.S.C.

24  §§ 1331, 1367(a), and 1441(a); and pursuant to 15 U.S.C. § 1692k(d).

ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT IN PART, DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT IN PART, AND REQUESTING SUPPLEMENTAL
BRIEFING - 6

**B.      Summary Judgment Standard**

Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court does not make credibility determinations or weigh the evidence at this stage. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The sole inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. And to the extent that the Court resolves factual issues in favor of the nonmoving party, this is true "only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

The Court will, however, enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party has carried its burden under Rule 56(c), "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). Metaphysical doubt is insufficient, *Zenith Radio*, 475 U.S. at 586, as are conclusory, non-specific affidavits, *Lujan*, 497 U.S. at 888–89.

**C.      The Whites Are Entitled to Partial Summary Judgment as to Mrs. White**

The Whites move for partial summary judgment on their claims that SBC violated sections 1692e and 1692f of the FDCPA by:

    1.  attempting to collect a debt from the Whites by garnishing Mr. White's wages, which are community property;

     2.    falsely stating to the Whites that a garnishment settlement agreement was required in order to accept payment of the entire judgment amount;

     3.    falsely stating to the Whites that their "non-compliance" would result in continuing the garnishment; and

     4.    misrepresenting the amount of the debt and collecting that misrepresented amount.

Dkt. No. 12 at 14–20. The Whites also move for summary judgment on their claims that SBC violated Revised Code of Washington Sections 19.16.250(16), (21), and (22). Dkt. No. 12-4 at 22–24. SBC asks the Court to deny the Whites' motion because Mr. White released all claims against SBC, or, in the alternative, because SBC did not commit a material violation of the FDCPA as to the least sophisticated consumer, and because the Whites "have not offered proof of any injury" as required under the WCPA. Dkt. No. 17 at 2–25.

For its part, SBC moves for summary judgment on all of the Whites claims for the following reasons:

     1.    The settlement agreement fully releases all of Mr. White's claims against SBC;

     2.    The Whites cannot state a claim under the FDCPA because a judgment is not a debt under the FDCPA, and even if it were, SBC had the right to garnish Mr. White's wages, "did not make any misrepresentations about the law by phone," did not make statements about the settlement agreement or whether the garnishment fees and costs were presently due and owing that were misleading "to the least sophisticated consumer," and did not violate the FDCPA by submitting an unsigned affidavit to the court containing a potentially erroneous representation regarding the interest rate;

     3.    Mrs. White is not a consumer under the FDCPA, and even if she were, she cannot prove any FDCPA violation for the above reasons;

4. The Whites cannot establish any element of the WCPA and fail to state a claim because the judgment is not a "claim" and the Whites are not "debtors" as defined by the WCAA; and

5. The Whites' economic duress claim fails because SBC did not apply immediate pressure, did not cause or contribute to the circumstances that led to Mr. White's vulnerability, and the immediacy of the situation "did not render impracticable any court action by which Mr. White might have avoided the burden of either of the detrimental choices."

Dkt. No. 8 at 6–25.

For the reasons discussed below, the Whites have the better of the arguments, at least as to Mrs. White.

1.    Mrs. White's FDPCA Claim

The FDCPA was enacted as a "broad remedial statute" designed to "'eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'" *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1060 (9th Cir. 2011) (quoting 15 U.S.C. § 1692(e)). The FDCPA "comprehensively regulates the conduct of debt collectors, imposing affirmative obligations and broadly prohibiting abusive practices." *Id.* at 1060–1061.

The FDCPA is a strict liability statute; plaintiffs need not prove an error was intentional. *Reichert v. Nat'l Credit Sys.*, 531 F.3d 1002, 1004 (9th Cir. 2008). It is also liberally construed in favor of the consumer. *Clark v. Capital Credit & Collection Servs. Inc.*, 460 F.3d 1162, 1176 (9th Cir. 2006). To determine if a violation of Section 1692e (false or misleading representations) or 1692f (unfair practices) occurred, the debt collector's actions are evaluated under the "least

ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT IN PART, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT IN PART, AND REQUESTING SUPPLEMENTAL BRIEFING - 9

1    sophisticated debtor" standard. *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d

2    939, 952 (9th Cir. 2011). The standard is objective, and asks whether "the least sophisticated debtor

3    would likely be misled" by the debt collector's conduct. *Swanson v. S. Or. Credit Serv., Inc.*, 869

4    F.2d 1222, 1225 (9th Cir. 1988). Prevailing plaintiffs are entitled to actual damages, statutory

5    damages, and attorney's fees and costs. 15 U.S.C. § 1692k(a). A debt collector's liability under

6    the FDCPA is an issue of law for the Court. *See, e.g., Gonzales*, 660 F.3d at 1061.

7         SBC does not dispute that it is a "debt collector" under 15 U.S.C. § 1692a(6). *See* Dkt. No.

8    8 at 14 ("SBC was attempting to collect its judgment from Mr. White through the garnishment it

9    served."). However, SBC does dispute whether Mrs. White's claims satisfy other definitions in the

10   statute. First, SBC argues that the judgment it obtained against Mr. White was not a "debt" under

11   the FDCPA. However, the Ninth Circuit has rejected the argument that a debt arising from a

12   judgment is not a "debt" under the FDCPA. *See, e.g., McNair v. Maxwell & Morgan PC*, 893 F.3d

13   680, 683 (9th Cir. 2018) (explaining that a debt that resulted from plaintiff's failure to pay

14   homeowner association fees was a "debt" under the FDCPA even though the debt collector

15   obtained a default judgment); *see also Weinstein v. Mandarich Law Group, LLP*, No. C17-1897-

16   RSM, 2018 WL 6199249 (W.D. Wash. 2018) (denying defendant's motion for summary judgment

17   where plaintiff alleged that defendant violated the FDCPA by improperly garnishing his wages to

18   pay a debt that had been reduced to a default judgment); 15 U.S.C. § 1692a(5) (defining a "debt"

19   as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in

20   which the money, property, insurance, or services which are the subject of the transaction are

21   primarily for personal, family, or household purposes, *whether or not such obligation has been*

22   *reduced to judgment*.") (emphasis added).

23        Second, SBC disputes that Mrs. White is a "consumer" protected under the FDCPA

24   because she was not obligated to pay Mr. White's judgment. Dkt. No. 8 at 22 & n.12. "The term

'consumer' means any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C.

§ 1692a(3). "An individual is still entitled to the protections of the FDCPA" if a collection agency

is asserting that he owes a debt, "even if he does not actually owe that debt." *Bereket v. Portfolio*

*Recovery Assocs., LLC*, No. C17-0812-RSM, 2017 WL 4409480, at *4 (W.D. Wash. Oct. 4, 2017);

*see also Gonzalez v. L. Firm of Sam Chandra, APC*, No. 13-CV-0097-TOR, 2013 WL 4758944,

at *3 (E.D. Wash. Sept. 4, 2013) ("The fact that the debt actually belonged to someone else does

not strip [the plaintiff] of a cause of action under the FDCPA."). Therefore, even though the

judgment was not against Mrs. White, she was a "consumer" protected by the FDCPA because

SBC collected from her community property.

In sum, Mrs. White satisfies the definitional prerequisites to state an FDCPA claim.

SBC next contends that even if the FDCPA applies to Mrs. White's claims, Mrs. White

still fails to state a claim because SBC did not violate the FDCPA. The Court disagrees.

### a) Mrs. White's Section 1692f Claims

Section 1692f of the FDCPA prohibits a debt collector from using "unfair or

unconscionable means to collect or attempt to collect any debt." Section 1692f(1) specifically

prohibits the "collection of any amount . . . unless such amount is expressly authorized by the

agreement creating the debt or permitted by law." The Whites argue that SBC violated Section

1692f by garnishing Mr. White's wages. They are correct.

State law prohibits an entity from collecting one spouse's separate debt, incurred prior to

marriage, from a couple's community property, including from "earnings" of "either spouse."

Wash. Rev. Code § 26.16.200. An exception applies if the debt "is reduced to judgment within

three years of the marriage." *Id*.; *see also In re Dickerson*, 597 B.R. 101, 108 (Bankr. W.D. Wash.

2019) (citing *Haley v. Highland*, 12 P.3d 119 (Wash. 2000)). Plaintiffs argue that Mr. White's

wages were community property since he was married to Mrs. White at the time of the

1    garnishment. Dkt. No. 12 at 12–13; *see also* Wash. Rev. Code § 26.16.030. SBC does not dispute

2    that the wages were community property. And SBC obtained the judgment only against Mr. White

3    and his ex-wife. Dkt. No. 9-4. Because SBC obtained the judgment in 2010, *id.*, which was not

4    within three years of the Whites' marriage in 2016, Dkt. No. 12-2, SBC was not entitled to garnish

5    Mr. White's wages to satisfy Mr. White's separate debt.

6         SBC argues that it was entitled to garnish Mr. White's earnings because it obtained

7    judgment against Mr. White more than three years prior to his marriage to Mrs. White. But SBC

8    misinterprets the plain language of the statute, which states that a party may collect against

9    community property if the debt is reduced to judgment "within" three years of the marriage. Wash.

10   Rev. Code § 26.26.200; *Haley*, 12 P.3d at 125 ("RCW 26.16.200 . . . allow[s] a creditor to reach

11   all of 'the earnings and accumulations' of a debtor spouse to satisfy a separate debt incurred before

12   marriage, provided that the debt is reduced to judgment within three years of the marriage"); *see*

13   *also* Harry M. Cross, *The Community Property Law (Revised 1985)*, 61 Wash. L. Rev. 13, 129

14   (1986) ("The three-year period within which judgment must be entered may precede the

15   marriage.") (citing *Casa del Rey v. Hart*, 643 P.2d 900, 905 (Wash. Ct. App. 1982)).[2]

16        SBC violated the FDCPA by issuing the improper garnishment and collecting on it. *See*

17   *Gonzalez v. Allied Collection Servs.*, 852 Fed. App'x 264, 266 (9th Cir. 2021) ("The service of a

18   writ of execution or writ of garnishment that seeks to collect an inaccurate debt amount can

19   constitute a violation or violations of . . . 1692f."). Therefore, Mrs. White is entitled to summary

20   judgment on her claim that SBC violated Section 1692f by using an unfair means to collect a debt

21   and collecting from the Whites' community property in violation of Washington law.

22

23   [2] Prior to 1969, and except in limited cases, Washington followed the "marital bankruptcy" rule. Immediately upon a
     debtor's marriage, a creditor lost the ability to enforce his claim against the new marital community. *See Watters v.
24   Doud*, 596 P.2d 280, 283 (Wash. 1979). The 1969 amendment with the addition of the provisos was meant "to
     [a]lleviate the harsh effects of the previous law" and give the creditor three years in which to get payment of the debt
     or reduce the debt to judgment. *Id.*

ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT IN PART, DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT IN PART, AND REQUESTING SUPPLEMENTAL
BRIEFING - 12

1

    *b)*  <u>*Mrs. White's Section 1692e Claims*</u>

2

   The Whites allege that SBC also violated Section 1692e by engaging in conduct that is

3 expressly prohibited in the following Subsections: e(2), which prohibits the "false representation

4 of . . . the character, amount, or legal status of any debt"; e(4), which prohibits "[t]he representation

5 or implication that nonpayment of any debt will result in . . . the . . . garnishment . . . of any property

6 or wages of any person unless such action is lawful"; e(5), which prohibits "[t]he threat to take

7 any action that cannot legally be taken or that is not intended to be taken"; and e(10), which

8 prohibits the "use of any false representation or deceptive means to collect or attempt to collect

9 any debt[.]" *See* 15 U.S.C.A. § 1692e; Dkt. No. 12 at 14–19.

10

   A debt collector violates Section 1692e by continuing to attempt to collect a debt that is no

11 longer owed. *See, e.g., Schore v. Renton Collections, Inc.*, C17-1777-JCC, 2018 WL 2018417, at

12 *3 (W.D. Wash. 2018). SBC violated Section 1692e by repeatedly telling the Whites that the

13 unlawful garnishment would continue—even though the Whites had remitted more than the full

14 amount allegedly owed—unless Mr. White signed and returned the settlement agreement. *See,*

15 *e.g.,* Dkt. No. 12-1 at 29–30, 37, 40, 45. SBC's representatives also made various false and

16 misleading statements, including telling the Whites that SBC could not apply the cashier's check

17 to their alleged debt because of the garnishment and that it could not accept their payment without

18 the signed settlement agreement. Dkt. No. 12-1 at 29–30, 37, 40, 45. SBC's representations were

19 untrue statements made in connection with a collection of a debt, and the least sophisticated debtor

20 would likely have been misled by them. And, contrary to SBC's assertions, Dkt. No. 19 at 16, its

21 statements to the Whites on the phone are actionable attempts to collect a judgment or debt under

22 the FDCPA despite the fact that SBC was rejecting the Whites' tender.

23

   SBC could have accepted the Whites' payment; it chose instead to withhold acceptance of

24 the payment until it could extract a signed settlement agreement. *See, e.g.*, Dkt. No. 8 at 12 ("SBC

1   required a settlement agreement to accept the check"). SBC was not only able to accept the Whites'

2   payment, but it was also obligated to dismiss the garnishment once Mr. White paid the amount

3   allegedly owed. Wash. Rev. Code § 6.27.320 (providing that when a plaintiff obtains satisfaction

4   of the judgment and payment of recoverable costs "from a source other than the garnishment," it

5   is the plaintiff's duty to obtain a dismissal).[3] SBC's statements that it would continue the illegal

6   garnishment were made in connection with the collection of the debt and falsely represented the

7   legal status of that debt, in clear violation of Section 1692e. And although SBC argues that it did

8   not make any misrepresentations to Mrs. White, Dkt. No. 8 at 22, she was speaking directly to

9   SBC on behalf of the community when SBC representatives made those misrepresentations. Dkt.

10  No. 12-2 at 3–4; Dkt. No. 12-1 at 35–40.

11         Equally unavailing is SBC's argument that it was entitled to continue the garnishment until

12  it had a signed settlement agreement because Mr. White's purported reason for paying SBC was

13  to stop the garnishment rather than to pay off the judgment. Dkt. No. 8 at 12; Dkt. No. 19 at 15.

14  SBC was not entitled to garnish Mr. White's wages at all, so it had no right to continue the

15  garnishment or to threaten to continue the garnishment to extract a release from Mr. White. *See,*

16  *e.g., Schore*, 2018 WL 2018417, at *3.

17         The Whites also contend that SBC misrepresented the amount of the debt by improperly

18  adding its garnishment costs to the amount it told the Whites they owed. Dkt. No. 12 at 13–14;

19  Dkt. No. 12-2 at 16; Dkt. No. 12-1 at 23 (stating that the amount owed was $7,056.59, which

20  included garnishment costs and fees).[4] The Whites are correct that SBC was not entitled to recover

21

22  [3] This duty is triggered "upon written demand of the defendant or the garnishee." *Id.* SBC contends that it was the Whites' burden to "move to dismiss the garnishment," which they did not do. Dkt. No. 19 at 13. But the statute does not require a motion to trigger SBC's obligation; "written demand" is sufficient. Mr. White submitted such a demand

23  with his payment of $7,200 to SBC on November 6, 2020. Dkt. No. 12-2 at 22 (requesting that SBC "stop the garnishment" because he had paid more than what SBC told him he owed on the judgment).

24  [4] SBC asks the Court to strike this argument, asserting that it was not made in the Whites' pleadings. Dkt. No. 19 at

ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT IN PART, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT IN PART, AND REQUESTING SUPPLEMENTAL BRIEFING - 14

1   its garnishment costs and fees until the court awarded them, which had not yet occurred. Wash.

2   Rev. Code § 6.27.250; *Watkins v. Peterson Enters., Inc.*, 973 P.2d 1037, 1047 (Wash. 1999)

3   (requiring a party to have obtained either a judgment or default judgment specifying such amounts

4   before recovering attorney's fees and filing costs associated with writs of garnishment). And,

5   although SBC's settlement agreement conveyed that those costs were not yet due, Dkt. No. 9-25

6   at 2, that was not what SBC stated in its call with Mr. White, Dkt. No. 12-1 at 23. Specifically,

7   SBC stated that "the total balance today is . . . $7,056.59," and informed Mr. White that he would

8   "have to sign a garnishment settlement before we can take payment on it." *Id.* The balance amount

9   included garnishment costs and fees. *See* Dkt. No. 8 at 21–22; Dkt. No. 9-25; Dkt. No. 12-2 at 16.

10   By stating that those costs were due before they were awarded, SBC misrepresented the amount

11   owed in violation of the FDCPA.[5]

12          Mrs. White can pursue her claims against SBC for these violations. Mrs. White did not sign

13   the settlement agreement and release, Dkt. No. 9-25, so the release does not bar her claims. Nor

14   does SBC contend that the agreement could be enforced against her as a non-signatory. While the

15   Court defers the issue of the enforceability of the agreement as to Mr. White as set forth below,

16   the agreement is not enforceable against Mrs. White.

17          SBC also argues that Mrs. White's claims should be dismissed because the Whites did not

18   respond to SBC's argument that it is entitled to summary judgment against Mrs. White. However,

19

20   13. However, like SBC's other requests to strike material in the Whites' briefs, this request is baseless. The Whites alleged in their complaint that SBC violated the FDCPA by "[f]alsely represent[ing] that fees and costs related to the unlawful garnishment were somehow presently due and owing." Dkt. No. 1-4 at 10.

21   [5] The Whites also contend that SBC's affidavit in support of the writ of garnishment in the Snohomish County Superior

22   Court was misleading and violated Section 1692e because it was unsigned and included an inaccurate interest rate. Dkt. No. 12 at 15–16. However, regardless of whether the Affidavit was signed, it included the correct total amount of alleged debt. Dkt. No. 9-6 at 1. And the interest rate was partially correct; at certain times, SBC charged lower or

23   no interest. Dkt. No. 19 at 10. The Whites do not explain how these errors would "frustrate [their] ability to intelligently choose [their] response." *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1034 (9th Cir. 2010). "[F]alse but non-

24   material representations are not likely to mislead the least sophisticated consumer and therefore are not actionable." *Id.* at 1033. The Court concludes that these errors were not material and are therefore not actionable.

ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT IN PART, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT IN PART, AND REQUESTING SUPPLEMENTAL BRIEFING - 15

1    the Whites did contest dismissal of Mrs. White's claims, and they seek summary judgment in favor

2    of both Mr. and Mrs. White. *See, e.g.*, Dkt. No. 12; Dkt. No. 15 at 2–3, 4 n.1, 14–15. Furthermore,

3    under Local Civil Rule 7(b)(2), the Court may not construe a party's failure to oppose a motion

4    for summary judgment as an "admission that the motion has merit." Mrs. White is entitled to

5    summary judgment on her FDCPA claim unless SBC can establish its bona fide error defense.

6                       2.    SBC's Bona Fide Error Defense

7         The FDCPA provides a "narrow exception to strict liability" for bona fide errors. *Clark*,

8    460 F.3d at 1177. "A debt collector may not be held liable in any action brought under this

9    subchapter if the debt collector shows by a preponderance of evidence that the violation was not

10   intentional and resulted from a bona fide error notwithstanding the maintenance of procedures

11   reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c).

12        "The bona fide error defense is an affirmative defense, for which the debt collector has the

13   burden of proof." *Reichert*, 531 F.3d at 1006. A defendant asserting a bona fide error defense must

14   establish that (1) it violated the FDCPA unintentionally; (2) the violation resulted from a bona fide

15   error; and (3) it maintained procedures reasonably adapted to avoid the violation. *McCollough*,

16   637 F.3d at 948.

17        SBC argues that resolution of this defense is premature because the Court has not yet found

18   a violation, and it requests an opportunity to present briefing on the defense if the Court finds a

19   violation. Dkt. No. 19 at 20–21. However, as set forth above, the Court has found that SBC violated

20   the FDCPA. Moreover, the Whites moved for summary judgment on liability and SBC's bona fide

21   error defense, Dkt. No. 12 at 21, so SBC should have substantively responded. *See* LCR 7(b)(2).

22   A court can decide the viability of a defense on a motion for summary judgment. *See, e.g., Frias*

23   *v. Patenaude & Felix APC*, No. C20-0805-JCC, 2022 WL 136816, at *6 (W.D. Wash. 2022)

24

(granting summary judgment to plaintiff on his FDCPA claim and holding that defendant failed to establish its bona fide error defense).

SBC has not submitted any evidence to show that it maintained any procedures adapted to avoid the violations in question, and there is no evidence from which a reasonable juror could conclude that SBC is entitled to the bona fide error defense. Therefore, Mrs. White is entitled to summary judgment on her FDCPA claims.

### 3. Mrs. White's State Law Claims

The Whites contend that SBC violated the WCAA and the WCPA by demanding and collecting amounts not authorized by law, threatening to continue the garnishment even after the Whites paid more than what was allegedly owed, and coercing a promise from Mr. White (through the settlement agreement) to pay more than he owed. Dkt. No. 12 at 23–24 (citing Wash. Rev. Code § 19.16.250(16), (21), (22)). The WCAA, Wash. Rev. Code § 19.16 *et seq.*, does not provide a cause of action. *See, e.g.*, *Williams v. Columbia Debt Recovery, LLC*, No. C20-1718-MAT, 2021 WL 1063330, at *4 (W.D. Wash. Mar. 19, 2021). Instead, the WCAA is enforced through the WCPA. *Id.*; Wash. Rev. Code § 19.16.440 (providing that actions prohibited by the WCAA "are declared to be unfair acts or practices or unfair methods of competition in the conduct of trade or commerce for the purpose of the application" the WCPA).

To prevail on a private WCPA claim, the plaintiff must prove that (1) the defendant engaged in an unfair or deceptive act or practice (2) occurring in trade or commerce and (3) impacting the public interest that (4) injured the plaintiff's business or property and (5) was caused by the defendant. *Hangman Ridge Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 535-539 (Wash. 1986). The WCPA is to be "liberally construed that its beneficial purposes may be served." Wash. Rev. Code § 19.86.920. A violation of the WCAA "'constitutes a per se violation of the [W]CPA'" because an act prohibited by the WCAA is an unfair act or practice in the conduct of

trade or commerce that impacts the public interest. *Sims v. Midland Funding LLC*, C20-1230-TSZ, 2021 WL 1546135, at *5 (W.D. Wash. Apr. 20, 2021) (quoting *Panag v. Farmers Ins. Co. of Washington*, 204 P.3d 885, 897 (Wash. 2009) and citing Wash. Rev. Code § 19.16.440).

SBC argues that Mrs. White cannot satisfy the requirements of the WCAA because she is not a "debtor" alleged to owe a "claim." Dkt. No. 8 at 24. Under the WCAA, a "debtor" is "any person owing or alleged to owe a claim," Wash. Rev. Code § 19.16.100(8), and in turn, a "claim" is "any obligation for the payment of money or thing of value arising out of any agreement or contract, express or implied," Wash. Rev. Code § 19.16.100(2). Mr. White's alleged obligation to pay the homeowners' association dues arose out of an agreement regardless of whether it was later reduced to a judgment. Dkt. No. 9 at 2; *see also* Dkt. No. 9-2 at 8. Therefore, the alleged obligation constitutes a "claim" within the meaning of the WCAA. SBC collected on that debt from the Whites' community property even though Mrs. White did not owe the debt. Because the WCAA protects consumers against attempts to collect "amounts not actually owed," *Panag*, 204 P.3d at 897; *Schore*, 2018 WL 2018417, at *5, Mrs. White is a "debtor" under the WCAA.

SBC next argues that even if Mrs. White satisfies the definitional prerequisites of the WCAA, she cannot prove a violation of the statute. The Court disagrees.

The WCAA prohibits a collection agency from "[t]hreaten[ing] to take any action against the debtor which the licensee cannot legally take at the time the threat is made." Wash. Rev. Code § 19.16.250(16). As explained above, SBC threatened to continue the garnishment even though it was not legally entitled to do so. Therefore, SBC's threats violated Subsection 16.

The WCAA also prohibits a collection agency from collecting or attempting to collect "in addition to the principal amount of a claim any sum other than allowable interest, collection costs or handling fees expressly authorized by statute, and, in the case of suit, attorney's fees and taxable court costs." Wash. Rev. Code § 19.16.250(21). Courts have interpreted Subsection 21 as

prohibiting collection agencies from "attempting to collect amounts not actually owed" and collecting more than what was owed. *Panag*, 204 P.3d at 897; *Dawson*, 2017 WL 5668073, at *4 (finding a violation where some of the debt defendant attempted to collect was not owed under the plaintiff's lease). In this case, SBC did both. It attempted to collect the judgment, and succeeded in collecting some of it, from the Whites' community property via the garnishment even though Mrs. White did not owe the debt. Dkt. No. 12-3 at 2–3. And SBC also collected its garnishment costs from the Whites, Dkt. No. 9-17 at 3, even though it was not allowed to do so because those costs had not been awarded by the court. *See* Wash. Rev. Code § 6.27.250(3). Therefore, SBC violated Section 21 by collecting amounts that the marital community did not owe.

The WCAA similarly prohibits "[p]rocur[ing from a debtor or collect[ing] or attempt[ing] to collect on any written note, contract, stipulation, promise or acknowledgment under which a debtor may be required to pay any sum other than principal, allowable interest, except as noted in subsection (21) of this section, and, in the case of suit, attorney's fees and taxable court costs." Wash. Rev. Code § 19.16.250(22). The Whites allege that SBC violated that section by requiring Mr. White to sign a document "agreeing" to pay more than he owed. Dkt. No. 12 at 24. The Court does not grant either party summary judgment on that claim because SBC did not require Mrs. White to sign the agreement, and as set forth below, the Court defers ruling on the parties' summary judgment motions regarding Mr. White.

Once a plaintiff establishes a per se violation of the WCPA, as Mrs. White has done here by establishing that SBC violated the WCAA, she need only demonstrate the violation proximately caused injury to her business or property. *Panag*, 204 P.3d at 899. An injury is distinct from damages, and expenses incurred in consulting an attorney about an improperly collected debt suffice to demonstrate injury. *Id.* at 899, 902; *Sims*, 2021 WL 1546135, at *6. The Whites satisfy that element because they incurred expenses meeting with an attorney about SBC's actions and

1   their legal responsibilities. Dkt. No. 12-2 at 7. Mrs. White has therefore met the elements to

2   establish her WCPA claim.

3          Accordingly, Mrs. White is entitled to summary judgment on her WCPA claim.

4      **D.     The Validity of the Settlement Agreement and Release of Claims**

5          With respect to whether SBC is liable to Mr. White, the Court must first determine whether

6   Mr. White has released his claims against SBC.

7          The parties do not dispute that Mr. White owed the debt and that the judgment was correct

8   and valid. The parties' settlement agreement laid out their bargain as follows: "[Mr. White] offers

9   to pay SB&C $7036.39 . . . in full settlement and satisfaction of the judgment," and in exchange,

10  "SB&C agrees not to pursue the current judgment, nor take further garnishment action on the

11  judgment." Dkt. No. 9-25 at 2. In addition, both parties released each other from:

12          any and all actions and causes of action . . . for or because of any matter or things
            done, omitted or suffered to be done by either SB&C or [Mr. White] prior to and
13          including the date hereof, in any way directly or indirectly arising out of or in any
            way relating to the subject matter of the Complaint, the judgment, this garnishment,
14          or any of the transactions or events associated therewith.

15  *Id*. Mr. White and the CEO of SBC signed the settlement agreement. Dkt. No. 9-25 at 3.

16         The Whites do not dispute that if the release is enforceable, it is broad enough to preclude

17  Mr. White from pursuing his claims against SBC. But the Whites contest the agreement's

18  enforceability on several grounds. The Whites bear the burden of providing that the contract is

19  unenforceable. *See, e.g., Retail Clerks Health & Welfare Tr. Funds v. Shopland Supermarket, Inc.*,

20  640 P.2d 1051, 1054 (Wash. 1982).

21         1.     Whether the Settlement Agreement Lacked Consideration

22         The Whites first contend that the settlement agreement is not a valid contract because SBC

23  did not provide any consideration. Dkt. No. 15 at 5–6. "Consideration is a bargained-for exchange

24  of promises." *Labriola v. Pollard Grp., Inc.*, 100 P.3d 791, 793 (Wash. 2004). Determining

ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT IN PART, DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT IN PART, AND REQUESTING SUPPLEMENTAL
BRIEFING - 20

1   whether consideration supports a contract is a question of law. *Hanks v. Grace*, 273 P.3d 1029,

2   1032 (Wash. 2012). "Courts generally do not inquire into the adequacy of consideration and

3   instead utilize a legal sufficiency test" which "'is concerned not with comparative value but with

4   that which will support a promise.'" *Labriola*, 100 P.3d at 793, 794 (cleaned up).

5           In this case, SBC provided something of value: it agreed to give up its right to enforce the

6   judgment via the garnishment or other methods. Dkt. No. 9-25 at 2. The Whites dispute SBC's

7   right to collect on the judgment from their community property, but they do not dispute the

8   judgment itself or that SBC was entitled to collect against Mr. White's separate property. SBC's

9   promise to forego further efforts to collect on the judgment against any source was sufficient

10  consideration to support the settlement agreement. *See, e.g., United Truck Lines v. Employers Mut.*

11  *Cas. Co.*, 268 P.2d 1014, 1016 (Wash. 1954) ("A settlement is supported by sufficient

12  consideration when there is a bona fide claim which is unliquidated, disputed or doubtful, the real

13  consideration to each party being, not the sacrifice of the right, but the settlement of the dispute.").

14  Therefore, the settlement agreement does not fail for lack of consideration.

15                  2.      Whether the Settlement Agreement Was Procured under Duress

16          The Whites also claim that the release is not enforceable because the settlement agreement

17  was procured under duress and economic duress. A release is governed by contract law, which

18  defines "voluntary" as "signing an instrument of one's own free will, knowing that one is signing

19  the agreement." *Chadwick v. Nw. Airlines, Inc.*, 654 P.2d 1215, 1218 (Wash. Ct. App. 1982).

20  "Unless there is a showing of fraud, deceit, coercion, mutual mistake or mental incompetency at

21  the time the instrument is executed, one having the opportunity to read it is deemed by law to have

22  understood its contents and cannot claim to have been misled thereby." *Id.*[6]

23  _____

24  [6] Courts use "coercion" and "duress" interchangeably. *See, e.g.*, *Retail Clerks*, 640 P.2d at 1054; *Pleuss v. City of Seattle*, 504 P.2d 1191, 1194 (Wash. Ct. App. 1972).

ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT IN PART, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT IN PART, AND REQUESTING SUPPLEMENTAL BRIEFING - 21

1    To establish a defense of duress, the Whites are required to prove that Mr. White was

2    deprived of his free will by the wrongful or oppressive conduct of SBC. *See Retail Clerks*, 640

3    P.2d at 1054. "The mere fact that a contract is entered into under stress or pecuniary necessity is

4    insufficient." *Id*.

5    To establish a defense of economic duress, the Whites must produce evidence showing that

6    (1) SBC applied immediate pressure; (2) SBC caused or contributed to the underlying

7    circumstances that led to Mr. White's vulnerability; and (3) the "immediacy of the situation

8    render[ed] impractical any court action by which [Mr. White] might [have] avoid[ed] the burden

9    of either of the detrimental choices." *Barker v. Walter Hogan Enters.*, 596 P.2d 1359, 1360 (Wash.

10   Ct. App. 1979). SBC argues that it did not cause the underlying circumstances that led to the

11   Whites' vulnerability; the Whites created it themselves by seeking to purchase a home. Dkt. No.

12   17 at 4. Notably, however, the Whites made their offer to purchase their new home in July 2020,

13   and SBC did not file the Writ until September 2020. Dkt. No. 9 at 2; Dkt. No. 12-2 at 2.

14   Presumably, the Whites did not know at the time they made their offer that the future garnishment

15   would jeopardize their home purchase. And even if SBC did not cause the underlying

16   circumstances that led to Mr. White's vulnerability, it contributed to them by obtaining the

17   unlawful garnishment. After the Whites informed SBC that they were married and that SBC's

18   illegal garnishment was jeopardizing their home purchase, SBC applied immediate pressure by

19   threatening to continue the garnishment unless Mr. White signed the settlement agreement.

20   Whether Mr. White can establish the third element of economic duress is less clear. He

21   received notice of the Writ in early October 2020, months before closing on the new home in

22   December 2020. Dkt. No. 9 at 5. He seems to have had various options to challenge the Writ but

23   did not utilize them. Dkt. No. 8 at 13. And he was represented by counsel when he signed the

24   agreement, Dkt. No. 9 at 6; Dkt. No. 9-17 at 2, a factor that weighs against a finding of duress.

1    *See, e.g., Direct Focus Inc. v. Admiral Ins. Co.*, 81 Fed. App'x 263, 265–66 (9th Cir. 2003) (citing

2    *Pleuss*, 504 P.2d at 1194).

3            The Court has been unable to find a Washington case on point, either directly or indirectly.

4    SBC relies on *Dickinson v. Winther*, 151 Wash. App. 1041 (2009) (unpublished), but the Court

5    does not rely on that case because it is unpublished. Wash. GR 14.1(a) ("Unpublished opinions of

6    the Court of Appeals have no precedential value and are not binding upon any court."); *see also*

7    *Cont'l W. Ins. Co. v. Costco Wholesale Corp.*, No. C10-1987 RAJ, 2011 WL 3583226, at *4 (W.D.

8    Wash. Aug. 15, 2011) ("Because Washington courts have made the judgment that 'unpublished'

9    state court decisions should not shape their decisions, this court follows their lead."). Based on the

10   absence of analogous case law and the Whites' potentially superseding claim that the settlement

11   agreement was illegal or void as against public policy, the Court defers ruling on the parties'

12   motions for summary judgment on the Whites' defense and their related economic duress claim.

13           3.      Whether the Settlement Agreement Was Illegal or Void as Against Public
                     Policy

14           Finally, the Whites argue that the release is unenforceable because the settlement

15   agreement is illegal and void as against public policy. Dkt. No. 15 at 5, 8–9.[7]

16           A contract that is either illegal or violates public policy is void and unenforceable. *Fluke*

17   *Corp. v. Hartford Accident & Indem. Co.*, 7 P.3d 825, 829 (Wash. Ct. App. 2000). An instrument

18   that is "intimately connected" to an illegal instrument is likewise unenforceable. *Sherwood &*

19   *Roberts-Yakima, Inc. v. Leach*, 409 P.2d 160, 164 (Wash. 1965). A party to an illegal contract has

20   no obligation to perform even if the other party has performed or received a benefit from the

21

22

23   _____

     [7] SBC argues that the Court should strike the Whites' argument that the settlement agreement was void as against
24   public policy because they did not include that argument in their complaint or discovery responses. SBC cites nothing
     in support of this argument. The complaint gave SBC fair notice of this argument, and the interrogatories SBC filed
     did not request this information. Dkt. Nos. 11-4, 1-1 at 7 ("SBC Attempts to Extort a Release of Liability").

     ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT IN PART, DENYING
     DEFENDANT'S MOTION FOR SUMMARY JUDGMENT IN PART, AND REQUESTING SUPPLEMENTAL
     BRIEFING - 23

1    bargain. *Cascade Timber Co. v. N. Pac. Ry. Co.*, 184 P.2d 90, 103 (Wash. 1947). Whether a

2    contractual provision contravenes public policy is a question of law. *Hanks*, 273 P.3d at 1032.

3            The Whites first contend that the subject matter of the settlement agreement—"SB&C

4    agreeing to stop a garnishment which it may not lawfully maintain"—is illegal, and therefore

5    "there is no contract." Dkt. No. 15 at 5. However, the settlement did not just obligate SBC to stop

6    the illegal garnishment; it also obligated SBC "not to pursue the current judgment." Dkt. No. 9-25

7    at 2. Neither party disputes the validity of the judgment or that SBC could pursue it by means other

8    than garnishment of community funds. Thus, a portion of the settlement agreement could be legal.

9    "When part of an agreement is illegal and thus unenforceable, but part is legal and enforceable, a

10   court may enforce the legal part 'only where the unenforceable portion is not an 'essential part' of

11   the consideration given to support the contract.'" *Nolte v. City of Olympia*, 982 P.2d 659, 667

12   (Wash. Ct. App. 1999) (quoting *Yakima Cnty. (W. Valley) Fire Prot. Dist. No. 12 v. City of Yakima*,

13   858 P.2d 245, 259 (Wash. 1993)). Whether the unenforceable portion is "an essential part of the

14   consideration given" depends on whether the parties would have formed the agreement without it.

15   *Id.*; *see also* 8 Williston on Contracts § 19:70 (4th ed.). The parties did not address this issue in

16   their briefs.

17           The Whites next argue that the settlement agreement is void as against public policy

18   because it is a form of abusive debt collection—and such abusive practices are contrary to the

19   public policy reflected in the WCPA and FDCPA. Dkt. No. 15 at 8–9. Ordinarily, public policy

20   does not prevent parties from releasing one another from liability. *Shields v. Sta-Fit, Inc.*, 903 P.2d

21   525, 527 (Wash. Ct. App. 1995) (citing *Wagenblast v. Odessa Sch. Dist. No. 105-157-166J*, 758

22   P.2d 968 (Wash. 1988)). In fact, this state's public policy favors settlement over litigation. *See,*

23   *e.g.*, *G&T Conveyor Co. v. Port of Seattle*, No. C07-1380RSM, 2008 WL 682242, at *10 (W.D.

24   Wash. Mar. 07, 2008).

1    At the same time, however, the Washington legislature has declared that the business of

2    debt collection affects the public interest. *Panag*, 204 P.3d at 892, 897. But the parties have not

3    cited, and the Court has not found, a case in which a Washington court declared a contractual

4    release void under circumstances like those present here. "Absent a clear prior expression of public

5    policy from the Washington state legislature or court decisions, Washington courts will not invoke

6    public policy to override an otherwise proper contract." *Maurice v. Allstate Ins. Co.*, No. C19-

7    1837-JCC, 2020 WL 2832515, at *3 (W.D. Wash. 2020) (citing *State Farm Gen. Ins. Co. v.*

8    *Emerson*, 687 P.2d 1139 (Wash. 1984)).

9    In addition, this Court is reluctant to declare the public policy of Washington, particularly

10   in the face of the competing public policies set forth above. "Courts are generally reluctant to void

11   a term of a contract as being contrary to public policy unless the provision is clearly contrary to

12   what the legislature or judicial decision has declared to be the public policy or it manifestly tends

13   to injure the public in some way." *Certain Underwriters at Lloyd's London v. Vision AFH LLC*,

14   No. C20-5662TLK, 2021 WL 5514598, at *1 (W.D. Wash. Nov. 24, 2021) (cleaned up).

15   Accordingly, the Court defers ruling on the parties' motions for summary judgment on

16   these issues and requests supplemental briefing, as set forth below.

17   **E.    Request for Supplemental Briefing**

18   A federal court may certify to the Washington Supreme Court a question of Washington

19   law involved in the underlying federal case when "it is necessary to ascertain the local law . . . in

20   order to dispose of such proceeding and the local law has not been clearly determined." Wash.

21   Rev. Code § 2.60.020. The Court may do so *sua sponte* in the exercise of its discretion. *See Alaska*

22   *Airlines, Inc. v. United Airlines, Inc.*, 902 F.2d 1400, 1402 n.1 (9th Cir. 1990). The certification

23   process serves the important judicial interests of efficiency and comity, saving "time, energy and

24   resources and help[ing] build a cooperative judicial federalism." *Lehman Bros. v. Schein*, 416 U.S.

ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT IN PART, DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT IN PART, AND REQUESTING SUPPLEMENTAL
BRIEFING - 25

386, 391 (1974). The Court is loath to uphold an unlawful agreement or to invalidate the parties' agreement based on potentially inaccurate standards.

Therefore, the Court requests supplemental briefing on (1) whether the Court should certify to the Washington Supreme Court the questions of (a) whether a release contravenes the public policy of Washington if it was entered into as the result of an unlawful garnishment and under threat of the garnishment continuing, and (b) whether the availability of state court procedures to challenge a garnishment preclude a debtor from establishing duress to avoid a settlement agreement related to the garnishment; and (2) whether the unenforceable portion of the settlement agreement is an "essential part" of the consideration given to support the agreement. The parties' memoranda must be no more than eight pages in length and must not include footnotes.

## IV.    CONCLUSION

For all of the foregoing reasons, the Court GRANTS the Whites' Motion for Partial Summary Judgment as to Deborah White on her FDCPA and WCPA claims, DENIES SBC's Motion for Summary Judgment as to Deborah White, and DEFERS ruling on the remainder of the parties' motions. The Court ORDERS the parties to submit, by June 21, 2022, supplemental briefing as described above.

Dated this 7th day of June, 2022.

Lauren King
United States District Judge

ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT IN PART, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT IN PART, AND REQUESTING SUPPLEMENTAL BRIEFING - 26